# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. Nos.   2206007604
)           2212003202
JASON ST. JEAN, )
)
Defendant. )

Submitted:  June 12, 2025
Decided:  July 30, 2025

## MEMORANDUM OPINION AND ORDER

### *Upon State's Motion To Correct Illegal Sentence*

### DENIED

Erik C. Towne, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

James M. Stiller, Jr., Esq., Schwartz & Schwartz, Attorneys at Law, P.A., Dover, Delaware, *Attorney for the Defendant*.

**Primos, J.**

**INTRODUCTION**

At his sentencing pursuant to a felony guilty plea, the Court relieved Jason L. St. Jean ("St. Jean") of his obligation to register as a Tier I sex offender. The State then filed a motion to correct illegal sentence, contending that this Court lacks statutory authority to grant such relief to felons. The Court concludes that the relevant statute grants the sentencing court authority to relieve Tier I felons. Accordingly, the State's motion for correction of illegal sentence is **DENIED.**

## I. BACKGROUND[1]

On May 31, 2023, St. Jean pled guilty to three felony counts and two misdemeanor counts of violation of privacy.[2] Due to the nature of the offenses, St. Jean's guilty plea would ordinarily have required him to register as a Tier I sex offender.[3] However, prior to his October 12, 2023, sentencing, St. Jean moved for relief from sex offender registration pursuant to 11 *Del. C.* § 4121(d)(6).[4] At his sentencing, the Court granted St. Jean's request over the State's objection.[5]

On November 1, 2024, the State filed a motion to correct illegal sentence, contending that the Delaware Code did not permit the Court to relieve felons of sex-offender registration via the process just described.[6] St. Jean opposed the State's motion, conceding the relevant facts but disputing the State's interpretation of the statute and case law.[7]

On February 14, 2025, the Court issued a letter order finding that the relevant statute was ambiguous and requesting briefing on legislative history relating to the

---

[1] Citations in the form of "D.I. ___" refer to docket items in case number 2206007604.
[2] D.I. 24.
[3] *See* 11 *Del. C.* § 4121(a)(4)(a); 11 *Del. C.* § 1335(a)(6); 11 *Del. C.* § 4121(d)(3).
[4] D.I. 25.
[5] D.I. 26.
[6] D.I. 31.
[7] D.I. 32.

2

statutory language at issue.[8]  Following briefing, the Court heard oral argument on May 9, 2025, and reserved judgment pending a written decision.[9]  On May 22, 2025, the Court issued a second letter order requiring the State to brief the Court on the classification of felonies and misdemeanors at the time the statute was amended, and permitting St. Jean to respond.[10]  The State and St. Jean did so on June 11 and June 12, 2025, respectively.[11]  The State's motion is now ripe for decision.

## II.    ANALYSIS

### A. Standard of review

Under Superior Court Criminal Rule 35(a), this Court "may correct an illegal sentence at any time[.]"  A sentence is illegal when "it exceeds the statutorily authorized limits . . . or is a sentence which the judgment of conviction did not authorize."[12]  This is an unusual case in which the State asserts that by relieving St. Jean of his registration obligations, the Court effectively imposed a sentence more lenient than that authorized by statute, given the offenses of which he was adjudged guilty.  Accordingly, the appropriate resolution of the State's motion turns on whether the Court had statutory authority to grant St. Jean relief from sex offender registration at sentencing.

### B. Delaware's sex offender tier system

Delaware law classifies sex offenders into three "tiers," determined by the offense with which they were originally charged.[13]  Tier II and Tier III offenders are subjected to more stringent community notification requirements[14] and must update

---

[8] *State v. St. Jean*, 2025 WL 503042 (Del. Super. Feb. 14, 2025).
[9] D.I. 37.
[10] D.I. 38.
[11] D.I. 39, 40.
[12] *McLeaf v. State*, 2007 WL 2359554, at *1 (Del. Aug. 20, 2007) (ORDER) (citing *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998)).
[13] 11 *Del. C.* § 4121(c).
[14] 11 *Del. C.* § 4121(i).

their registration information more frequently[15] than Tier I offenders. The sentencing court may assign individuals convicted of certain Tier I offenses to Tier II or Tier III upon motion of the State, if it finds by a preponderance of the evidence that "public safety will be enhanced by assigning the offender" to that tier.[16] An individual who is convicted of a Tier I offense within 5 years after a previous conviction for such an offense is automatically redesignated to Tier II.[17]

### C. The registration relief process

Delaware law provides two processes by which a sex offender may have his or her registration obligations relieved by this Court. The first allows the Court to relieve those who do not reoffend for a specified period. The second allows the Court to relieve offenders at or before sentencing if, in the Court's view, public safety does not require registration. It is this second process by which St. Jean was relieved, but a full understanding of the statutory scheme is necessary to resolve the question this case presents.

Under the first process, an offender who has, for a statutorily-defined period, neither been convicted of any crime (other than a motor vehicle offense) nor violated his or her probation may petition the Court to have his or her registration reduced by one tier.[18] In the case of Tier I offenders, such a reduction results in relief from registration.[19] Before the Court may grant such a petition, the offender must "establish[], by a preponderance of the evidence, that the public safety no longer requires preservation of the original designation."[20]

Delaware law affords a second process by which offenders may obtain relief,

---

[15] 11 *Del. C.* § 4120(g); 11 *Del. C.* § 4121(k).
[16] 11 *Del. C.* § 4121(d)(1)–(2).
[17] 11 *Del. C.* § 4121(d)(5).
[18] 11 *Del. C.* § 4121(e)(2)c.
[19] 11 *Del. C.* § 4121(e)(2).
[20] 11 *Del. C.* § 4121(e)(2)d.1.

provided that they make a request before sentencing. The procedural and substantive requirements for such relief are outlined by 11 *Del. C.* § 4121(d)(6):

> Notwithstanding any provision in this section or in § 4120 of this title to the contrary, any person who would otherwise be designated as a sex offender pursuant to this section and to § 4120 of this title may petition the sentencing court for relief from such designation, and from all obligations imposed by this section and § 4120 of this title if:
>
> a.    The tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 13 years of age; and
>
> b.    The person has not previously been convicted of a violent felony, or any other offense set forth in paragraph (a)(4) of this section,[21] or of any offense specified in the laws of another state, the United States or any territory of the United States, or any offense in a foreign jurisdiction which is the same as, or equivalent to, such offense; and
>
> c.    The sentencing court determines by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title.
>
> Notwithstanding anything in this paragraph to the contrary, no person designated as a Tier II or Tier III sex offender shall be afforded relief from designation as a sex offender if the victim of any of the offenses for which the person was convicted were less than 12 years old at the time of the crime, unless the person was also less than 18 years old at the time of the crime in which case the prohibition set forth in this sentence shall not apply. Any person seeking relief from designation as a sex offender under this paragraph shall file a petition with the sentencing court prior to sentencing requesting such relief. The petition shall be granted or denied by the sentencing court after it weighs all relevant evidence which bears upon the particular facts and circumstances of the offense, and the character and propensities of the offender.
>
> If not relieved of the registration requirement at sentencing, Tier I and II

---

[21] 11 *Del. C.* § 4121(a)(4) specifies the offenses that designate an individual as a sex offender.

offenders may not petition the Court for relief for, at minimum, 10 years.[22] Tier III offenders must maintain a clean record for 25 years before seeking relief post-sentencing.[23]

### D. 11 *Del. C.* § 4121(d)(6) is ambiguous as it relates to Tier I felons.[24]

Key to the instant motion is 11 *Del. C.* § 4121(d)(6)a.'s proviso that "[t]he Tier II or Tier III offense for which the person was convicted was a misdemeanor[.]" St. Jean's position is that Tier I felons may be relieved under the statute, even though not explicitly mentioned. The State's position is that only misdemeanants may be relieved. On this point, the statute is ambiguous.

A statute is ambiguous when susceptible to multiple reasonable interpretations,[25] or when "a literal interpretation of its words would lead to 'a result so unreasonable or absurd that it could not have been intended by the legislature.'"[26] This latter source of ambiguity is a logical extension of the maxim that the "fundamental rule [of statutory construction] is to ascertain and give effect to the intent of the legislature."[27]

This statutory provision is susceptible to both parties' interpretations. The State's is perhaps the more intuitive reading, as the statutory text makes no mention of felonies. However, the State's interpretation, which treats § 4121(d)(6)a.'s reference to Tier II and Tier III misdemeanants as an exclusive list of the persons

---

[22] 11 *Del. C.* § 4121(e)(2)b.–c. The ten-year requirement resets if the offender violates the terms of his or her probation or is convicted of any crime other than a motor vehicle offense during that period. *Id.*

[23] 11 *Del. C.* § 4121(e)(2)a.

[24] The Court reached this conclusion in its letter order of February 14, 2025, for substantially the same reasons stated herein. *St. Jean*, 2025 WL 503042, at *1–3.

[25] *State v. O'Dell*, 2017 WL 923461, at *7 (Del. Super. Mar. 1, 2017) (quoting *Bon Ayre Land, LLC v. Bon Ayre Community Ass'n (Bon Ayre II)*, 149 A.3d 227, 233 n.21 (Del. 2016)); *see also State v. Young*, 314 A.3d 688, 691 (Del. Super. 2024).

[26] *Young*, 314 A.3d at 694 (quoting *Snyder v. Andrews*, 708 A.2d 237, 241 (Del. 1998)).

[27] *Id.* at 696 (quoting *State v. Ford*, 1996 WL 190783, at *2 (Del. Super. Mar. 26, 1996)) (alteration in original).

eligible for relief, would lead to an absurd result, as it would also deny relief to Tier I misdemeanants, who are presumably less of a threat to society than their Tier II or Tier III counterparts. Specifically, it would mean that Tier II and Tier III misdemeanants could seek relief prior to sentencing, while Tier I misdemeanants would be required to wait 10 years before seeking relief under 11 *Del. C.* § 4121(e)(2)c. Since the provision is not clearly drafted, the absurdity resulting from a literal or cribbed reading of its text militates for a finding of ambiguity. Indeed, Delaware trial courts have repeatedly recognized this ambiguity.[28]

## E. Delaware precedent does not resolve the statute's ambiguity.

The Delaware Supreme Court has considered the application of § 4121(d)(6) to felons only twice.[29] In two table decisions decided on the same day, the Court affirmed the lower courts' conclusion that Tier II felons were not entitled to relief. In the course of resolving one of these cases, *Grant v. State*, the Supreme Court announced, seemingly categorically, that "a felony-level offender is not eligible for relief from registration . . . because the language of the statute clearly states that only misdemeanor-level offenders are eligible for relief."[30] Thus, the appellant in that case, "a felony-level offender, [was] not eligible for relief from registration."[31]

While *Grant* could be taken to definitively resolve the question before this Court, two facts caution against such an application of that decision. First, *Grant* involved a Tier-II felony offender.[32] In other words, the statute's application to Tier-

---

[28] *O'Dell*, 2017 WL 923461, at *7; *State v. President*, 2014 WL 595406, at *3 (Del. Super. Jan. 2, 2014); *State v. E.A.*, 2010 WL 5692095, at 4 (Del. Fam. Feb. 4, 2010), *aff'd sub nom.*, *Adams v. State*, 11 A.3d 226, 2010 WL 5342957 (Del. Dec. 20, 2010) (TABLE)).

[29] Although the Supreme Court has issued one other opinion interpreting § 4121(d)(6), that case did not directly address the language at issue here. *See Fox v. State*, 11 A.3d 226, 2010 WL 5342956 (Del. Dec. 20, 2010) (affirming *State v. J.F.*, 2009 WL 5206804 (Del. Fam. Dec. 3, 2009)).

[30] 11 A.3d 226, 2010 WL 5232959, at *1 (Del. Dec. 20, 2010) (ORDER) (citing *Adams*, 2010 WL 5342957).

[31] *Id.*

[32] *Id.*

I felons was not before the *Grant* Court.[33]   Second, and more significantly, the contemporaneously-released Supreme Court decision that *Grant* cites does not stand for the proposition that *Grant*'s sweeping language appears to, as explained *infra*. Particularly in light of those considerations, Grant's reference to "felony-level offenders" could easily be taken as an imprecise formulation, intended to mean "felony-level offenders subject to Tier-II registration," such as the appellant in that case.   Thus, *Grant*, which is a very brief decision, is itself ambiguous.

The Supreme Court decision upon which *Grant* relies, *Adams v. State*, also involved a Tier-II registration that resulted from a felony.[34]   Also like *Grant*, the *Adams* decision did not engage in any statutory construction.[35]   Instead, the Court merely held that "the final judgment of the Family Court . . . [was] affirmed on the basis of and for the reasons assigned by the Family Court in its decision dated February 4, 2010."[36]   The Family Court decision, in turn, was much more narrowly reasoned than *Grant*'s "felony-level offender" language implies.  The Family Court concluded that the statute was ambiguous, but that such ambiguity did not extend to Tier-II felons, who were clearly not permitted to seek relief.[37]   Most relevant here, the Family Court noted that:

> While it is not clear whether the "Tier II or Tier III qualification" in the

---

[33] *See In re MFW S'holders Litig.*, 67 A.3d 496, 521 (Del. Ch. May 29, 2013) (noting that "judicial statements on issues that would have no effect on the outcome of the case" or about which the Supreme Court did not have "the benefit of full argument and record" are *dicta* and thus do not constitute binding holdings) (internal quotation and citation omitted), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014), *overruled on other grounds*, *Flood v. Synutra Int'l, Inc.*, 195 A.3d 754 (Del. 2018).  Even judicial *dictum*, which is "expression of opinion upon a point in a case argued by counsel and deliberately passed upon . . . though not essential to disposition of the cause," is not binding, and, though highly persuasive, should not be followed if erroneous.  *Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *7 (Del. Super. July 10, 2020) (quoting *Cates v. Cates*, 619 N.E. 2d 715, 717 (Ill. 1993)), *aff'd*, 250 A.3d 751 (Del. 2021).

[34] 2010 WL 5342957, at *1.

[35] *Id.* at *2.

[36] *Id.*

[37] *See E.A.*, 2010 WL 5692095, at *3–4.

statute provides that a person may not seek relief for any Tier I offense or that any person designated to Tier I may seek relief, this issue is not before the Court at this time.[38]

In short, the Family Court decision, the logic of which the Supreme Court adopted in *Adams*, expressly declined to extend its holding to the very ambiguity facing this Court.

This precedent cuts against an expansive reading of *Grant*. As noted *supra*, the *Grant* Court wrote that "the language of the statute clearly states that only misdemeanor-level offenders are eligible for relief."[39] As the Family Court (and by extension the Supreme Court) recognized in *Adams*, such clarity exists only with respect to Tier II and Tier III offenders. The *Grant* Court's use of the word "clearly" thus suggests that the Court did not intend to create binding authority that Tier I felons, for whom such clarity is lacking, are categorically barred from relief.

Persuasive authority is also scant.[40] In *State v. O'Dell*, this Court accepted the more expansive reading of *Grant*'s and *Adams*'s holdings (i.e., to prohibit relief for any felony-level sex offenders).[41] Taking this premise as a given, the Court found that § 4121(d)(6) "provides the possibility of relief for offenders convicted of Tier I misdemeanor offenses," notwithstanding the fact that the statute refers only to Tier-II and Tier-III misdemeanants.[42] The Court noted that, during debates in the General Assembly, the Chief of Staff to the Department of Justice, in response to hypotheticals concerning specific misdemeanors, twice explained that Tier I offenders could petition for relief to avoid ever being designated as sex offenders.[43] Ultimately, the *O'Dell* Court decided to view "the inclusion of the phrase 'Tier II or

---

[38] *Id.* at *4.
[39] *Grant*, 2010 WL 5232959, at *1.
[40] *See also State v. D.M.*, 2013 WL 1845596, at *4 (Del. Fam. Mar. 8, 2013) (accepting, in *dicta*, the interpretation that *Grant* permitted relief only for misdemeanor offenders).
[41] 2017 WL 923461, at *6.
[42] *Id.* at *7.
[43] *Id.* at *4–5.

Tier III' in subparagraph 'a' as a drafting error."[44] The Court reasoned that this created "less mischief" than barring Tier I misdemeanants from relief.[45]

This Court concludes that the best reading of the Supreme Court's *Grant* and *Adams* decisions is that they left the application of the statute to Tier I felons unresolved. To the extent that *O'Dell* interpreted those decisions otherwise, this Court is not persuaded by its reasoning. Further, for reasons explained later in this opinion, the fact that *O'Dell*'s interpretation of *Grant* and *Adams* required that Court to disregard statutory language in order to avoid an absurd result counsels against such an application of those precedents.

### F. The statute's legislative history does not clearly reveal the General Assembly's intent in adopting the relevant language.

When resolving statutory ambiguity, the Court may consider legislative history to ascertain legislative intent.[46] "Legislative history is defined as the proceedings leading to the enactment of a statute, including hearings, committee reports, and floor debates."[47]

In 1999, the Delaware General Assembly adopted a comprehensive new statutory scheme to deal with sex offenders.[48] As of this enactment, sentencing

---

[44] *Id.* at *8.

[45] *Id.* The Court further reasoned that the only other holding available to it (under its reading of *Grant*) would treat the entire paragraph as surplusage, because the statute referred to Tier II and Tier III "offenses" rather than Tier II and Tier III "offenders," and no misdemeanor is categorized as a Tier II or Tier III offense. *Id.* This Court rejects *O'Dell*'s "offense/offender" distinction as excessively technical. A more harmonious reading of the statute is that Tier I offenses become Tier II or Tier III offenses in a given case if the offender is subject to registration at that tier via one of the mechanisms provided by law. *See generally Riad v. Brandywine Valley SPCA, Inc.*, 319 A.3d 878, 884 (Del. 2024) (recognizing that courts may interpret a statutory term in light of the whole of the statutory scheme to achieve harmony or coherence when the meaning of the term is doubtful).

[46] *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 978 (Del. 2021) (citation omitted).

[47] *Young*, 314 A.3d at 688 (quoting *Pizzadili Partners, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *4 n.28 (Del. Super. Aug. 26, 2016) (citation modified)).

[48] 71 Del. Laws ch. 429, §§ 1–2 (1999).

courts were authorized to relieve individuals of registration if, *inter alia*, "the offense for which the person was convicted was a misdemeanor[.]"[49]  This language remained unchanged until 2007, when the amendment at issue in this case was adopted.

Following the enactment of the federal Sex Offender Registration and Notification Act ("SORNA"),[50] Delaware State Senator Patricia Blevins introduced legislation intended to bring Delaware law into substantial compliance with the new federal requirements.  This legislation, introduced as Senate Bill 60 in the 144th General Assembly ("S.B. 60"), made no changes to the "misdemeanor" language in its initial form.  However, Senate Amendment 2, also introduced by Senator Blevins, contained the following language:  "Amend the newly designated § 4121(d)(6)a., Title 11 of the Delaware Code by inserting after the word 'The' and before the word 'offense,' the phrase 'Tier II or Tier III[.]'"  The amendment's synopsis, which expressly addressed other changes not relevant to this case, made no mention of the addition of "Tier II or Tier III" to § 4121(d)(6)a.[51]  The only potentially-applicable language in the synopsis was a vague reference to "technical corrections."  Amendment 2 was approved and incorporated into the bill prior to final passage by the Senate and House, and is reflected in the current Code.

The Court has, with the aid of the parties, reviewed the audio of the Senate

---

[49] 11 *Del. C.* § 4121(e)(6)a. (1999).

[50] Adam Walsh Child Protection and Safety Act of 2006 §§101–131, Pub. L. No. 109–248, 120 Stat. 587–601 (2006).

[51] This fact could indicate that it was not Senator Blevins's intention to make a significant change to § 4121(d)(6)a. through the addition of the "Tier II or Tier III" language.  However, this would be a thin reed on which to build this Court's statutory construction.  Ultimately, it is the intent of the legislature, not the bill author, that this Court is seeking.  The clearest expression of the legislature's intent is the statutory language it adopted.  "[The legislature] votes on the statutory words, not on different expressions packaged in committee reports," nor in ratification of amendment synopses, floor speeches or witness testimony.  *Young*, 314 A.3d at 699 (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1054 n.11 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987)) (alteration in original).

11

and House debates on S.B. 60 (at which the Chief of Staff of the Delaware Department of Justice testified); the minutes of the House Public Safety and Homeland Security Committee's meeting referring S.B. 60 for a vote by the whole body; and the fiscal note attached to the bill by the Office of Controller General. None of these materials touched upon whether felons would be eligible for relief by the sentencing court under the bill.

Taken as a whole, the legislative history shows only two things:  through Amendment 2, the Senate affirmatively acted to add "Tier II or Tier III" to § 4121(d)(6)a., rather than leaving untouched the preexisting "misdemeanor" language; and, through S.B. 60, the General Assembly sought to bring Delaware law into substantial compliance with SORNA.  Neither of these insights clearly resolves the issue before the Court.[52]  Beyond those insights, the Court, cognizant of the caution necessary when dealing with extrinsic sources of meaning, is reluctant to draw any further inferences of legislative intent from the legislative history.

### G. The best reading of the statute permits Tier I felons to seek relief prior to sentencing.

The structure and language of 11 *Del. C.* § 4121(d)(6) suggest that Tier I felons and all misdemeanants may seek relief from registration prior to sentencing, but that Tier II and Tier III felons may seek relief only after a statutorily-defined period.  This determination is confirmed by Delaware courts' presumption that the

---

[52] The Court declines to adopt the State's view that, because S.B. 60 was intended to make Delaware law more stringent, the Court must adopt the construction less favorable to sex offenders. S.B. 60 was intended to reach substantial compliance with SORNA, but Delaware's risk tiers still differ from the federal requirements in various ways, including in ways that deviate downward from what SORNA specifies.  *See* State's Supplemental Brief to Motion to Correct Illegal Sentence Ex. G 12 (D.I. 34) (May 2019 U.S. Department of Justice Report noting six offenses requiring registration under SORNA but not under Delaware law).  Thus, even if SORNA forbade relief for Tier I felons by the sentencing court, it would not follow that Delaware law was intended to follow suit.  Whether by inadvertence or by choice, the General Assembly has not copied every provision of the federal law in order to achieve substantial compliance therewith.

General Assembly acts with purpose and avoids surplusage, and by this Court's duty to avoid absurd outcomes.

In interpreting an ambiguous statute, Delaware courts may "draw inferences concerning [its] meaning from its composition and structure."[53] The structure of this statute favors St. Jean's position. The first paragraph of § 4121(d)(6) states that, as a general proposition, "any person who would otherwise be designated as a sex offender . . . may petition the sentencing court [prior to sentencing] for relief from such designation, and from all obligations imposed[.]"[54] Read in conjunction, it is apparent that the legislature's intent was for each of the following subparagraphs to set limitations on this permissive language. Subparagraph c. states that a defendant may not be relieved unless the Court is satisfied that he or she is not a threat to public safety. Subparagraph b. states that persons previously convicted of violent felonies and sex offenses may not be relieved. Finally, subparagraph a., at issue in this case, states that, if a person is pending designation as a Tier II or Tier III offender, that person is not entitled to relief unless the conviction resulting in that designation was for a misdemeanor.

The State's reading, which treats subparagraph a.'s reference to misdemeanants as setting forth the entire class of persons eligible for relief, conflicts with the statute's apparent structure. The State's reading would treat subparagraph a. as inclusionary, even though subparagraphs b. and c. are both restrictive of the class of persons who may be relieved.[55]

More significantly, the State's position treats portions of the statutory text as

---

[53] *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000) (quoting *Klotz v. Warner Commc'ns, Inc.*, 674 A.2d 878, 879 (Del. 1995)).

[54] Likewise, 11 *Del. C.* § 4121(d)(6)'s final paragraph refers to "any person seeking relief from designation" without suggesting that this group must be made up exclusively of misdemeanants.

[55] It is worth noting that 11 *Del. C.* §4121(d)(6)'s final paragraph is also restrictive of the class of persons seeking relief, as it sets qualifications based on the age of the offender and victim and requires that any request be made prior to sentencing.

surplusage. "[C]ourts must ascribe a purpose to the use of statutory language, if reasonably possible."[56] For the reasons just explained, the State's understanding of the provision would render meaningless the opening paragraph's general statement that "any person . . . designated as a sex offender" may seek relief.

Further, unless the statute's reference to "Tier II or Tier III" is, as in *O'Dell*, treated as a drafting error, the State's reading would result in absurdity. If subparagraph a.'s reference to Tier II or Tier III misdemeanants defined the entire universe of persons eligible for relief, Tier I misdemeanants would be categorically barred. Plainly stated, such a law would make no sense.

As the State notes in its supplemental brief, at the time the 2007 amendment was adopted, no misdemeanor was automatically categorized as a Tier II or Tier III offense.[57] More dangerous misdemeanants could, however, be designated as Tier II or Tier III offenders via various mechanisms.[58] Only one of these bears on the proper interpretation of 11 *Del. C.* § 4121(d)(6), because the others bar relief under that provision.[59] Relevant here, a guilty plea to a lesser-included-offense may result in a Tier II or Tier III misdemeanor if the originally charged offense was a Tier II or Tier III felony.[60]

---

[56] *Dewey Beach Enters., Inc. v. Bd. of Adjustment of Town of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010) (quoting *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994)); *accord Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011).

[57] State's Supplemental Brief to Motion to Correct Illegal Sentence 2 (citing 11 *Del. C.* § 4121(e) (2007)).

[58] For example, a Tier I misdemeanor could be elevated to a Tier II offense because the defendant was a recidivist. 11 *Del. C.* § 4121(e)(5) (re-offense within five years results in designation as Tier II offender for Tier I offense). As explained in section II.B. of this opinion, the sentencing court may also, upon motion of the State, designate misdemeanants as Tier II or Tier III offenders in the interest of public safety. *See also E.A.*, 2010 WL 5692095, at *3 (describing the then-extant mechanisms by which a misdemeanant could be subjected to Tier II or Tier III registration).

[59] 11 *Del. C.* § 4121(d)(6)b. (prior sex offense conviction bars relief); 11 *Del. C.* § 4121(d)(6)c. (threat to public safety bars relief).

[60] *See* 11 *Del. C.* § 4121(d) (2007) ("In the event the sentencing court determines that the person shall be designated as a sex offender, it shall then immediately assign the defendant to the Risk Assessment Tier applicable for the originally charged offense in the case of a plea agreement[.]").

As previously indicated, it would be at best counterintuitive for the General Assembly to adopt a statute that required Tier I misdemeanor offenders to wait ten years before seeking relief from registration but allowed Tier II and Tier III misdemeanor offenders to petition for relief prior to sentencing. Tier II and Tier III offenders are presumed more dangerous than Tier I offenders, which is why they are subject to heightened obligations.[61] Although persons sentenced as misdemeanants because they pled down from felony charges could be viewed as less dangerous than persons who insisted on going to trial (e.g., because they accepted responsibility for their actions), there is no logical reason to treat persons who plead down from Tier II or Tier III felonies better than persons who plead to a charged Tier I misdemeanor or a lesser-included offense of a Tier I felony. It would be absurd to give the most dangerous sex offenders a fast track to relief from registration but deny that avenue to the least dangerous.

The Court will not adopt *O'Dell*'s reasoning to avoid this absurdity. Delaware courts "presume that the General Assembly purposely chose particular language and therefore construe statutes to avoid surplusage if reasonably possible."[62] Through Amendment 2, the Senate acted to add the language "Tier II or Tier III" to § 4121(d)(6)a. It did not explain why. However, it presumably did so for *some* purpose. *O'Dell*'s reasoning reverts the statute to the *status quo ante* prior to passage of S.B. 60. If the only interpretation the statute's language could bear resulted in absurdity, this might be the appropriate resolution—but this is not so. As the Supreme Court has instructed, "[s]tatutes should be construed as a whole, in a way

---

[61] Further, the statute appears to anticipate that offenders relieved under § 4121(d)(6), i.e., prior to sentencing, will be less likely to reoffend even if they have prior criminal history, because they are disqualified from such relief only by prior violent felonies or sex offenses, not, as under the alternative route for relief, by any non-motor-vehicle offense within the statutory period. *Compare* 11 *Del. C.* § 4121(d)(6)b. *with* 11 *Del. C.* § 4121(e)(2).

[62] *Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 422 (Del. 2013) (citing *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)).

that gives effect to all of their provisions and avoids absurd results."[63]  The interpretation the Court adopts today does so.  It is, therefore, preferable to *O'Dell*'s rationale, which was necessitated exclusively by a maximalist and (as stated previously) unpersuasive reading of *Grant*.

## III.  CONCLUSION

In summary, 11 *Del. C.* § 4121(d)(6) permits sentencing courts to relieve Tier I felons of their obligation to register as sex offenders if the other statutory requirements are satisfied.  This Court relieved St. Jean of his Tier I registration obligations at sentencing, and the State does not now contend that any other statutory prerequisite was absent.  Accordingly, the Court did not illegally reduce St. Jean's sentence beyond a statutory minimum, and the State's motion to correct illegal sentence is therefore **DENIED.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

oc:    Prothonotary

cc:    Counsel of Record

---

[63] *Chase Alexa, LLC v. Kent Cnty. Levy Ct.*, 991 A.2d 1148, 1152 (Del. 2010) (citing *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007)).